UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW WONG, *et al.*, *individually and on behalf of all others similarly situated*,
Plaintiffs,

-v-

TD BANK GROUP, *et al.*,
Defendants.

25-CV-9634 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Andrew Wong ("A. Wong"), Ka Po Wong ("K. Wong"), Anne Louie, Millie Su, and April Ng (collectively, "Plaintiffs") bring this action against Defendants TD Bank Group and TD Bank, N.A. (collectively, "TD Bank"), asserting claims for employment discrimination under federal and New York law. (ECF No. 3.) Before the Court is TD Bank's motion to dismiss the complaint. (ECF No. 14.) For the reasons that follow, the motion is granted in part and denied in part.

## I. Background

The following facts are taken from Plaintiffs' complaint (the "Complaint") and documents incorporated therein, and are presumed true for purposes of resolving the present motion. *Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Plaintiffs are former employees of TD Bank who are of Chinese national origin. (ECF No. 3 ("Compl.") ¶ 18.) In or before 2021, the Department of Justice, prompted by federal criminal charges against a Chinese national who coordinated a money laundering scheme using TD Bank branches in New York City, commenced an investigation into TD Bank's anti-money

laundering ("AML") practices and compliance with the Bank Secrecy Act. (*Id.* ¶¶ 21-22.) Subsequently, beginning in 2022 and continuing through 2023, TD Bank's AML group investigated the personal transactions of Chinese and Chinese American employees who worked at branches serving Chinese and Chinese American communities, including TD Bank branches located in New York City's various Chinatowns (the "Chinatown branches"). (*Id.* ¶ 27.) Plaintiffs allege upon information and belief that TD Bank did not conduct similar investigations into the flagged transactions of employees who are not Chinese or Chinese American and did not conduct similar investigations at branches that are not in Chinatown. (*Id.* ¶ 31.) As a result of the investigations, twenty-two TD Bank employees at the Chinatown branches were terminated or otherwise subjected to adverse employment actions. (*Id.* ¶ 30.) All but one of the known terminated employees are Chinese or Chinese American, and at least one of the terminated employees was terminated for a transaction with a Chinese American employee. (*Id.*) TD Bank eventually entered into a plea agreement with the government admitting that criminal enterprises had been able to exploit its systems to commit money laundering and promising to assist in the prosecution of those who leveraged the weaknesses in its AML program, including five store-level employees, none of whom are among the twenty-two employees terminated from the Chinatown branches. (*Id.* ¶¶ 28, 30.)

At the time of his termination, A. Wong served as a branch manager at the TD Bank branch located at 314 Grand Street in Manhattan. (*Id.* ¶ 37.) Because TD Bank encouraged its employees to open personal accounts with TD Bank, A. Wong maintained three personal checking accounts and one business account with TD Bank, the latter of which was used for the income and expenses from an investment property. (*Id.* ¶ 40.) On or about March 20, 2023, A. Wong was notified that TD Bank was conducting a corporate audit of his branch. (*Id.* ¶ 41.) A.

Wong was then instructed to report to TD Bank's New York headquarters the next day, where he was interviewed by a TD Bank attorney and a TD Bank human resources representative, with members of corporate security and possibly upper management in attendance. (*Id.* ¶¶ 42, 45.) A. Wong was asked about various transactions he had made, including: Zelle payments from some of his TD Bank team members, which he explained were reimbursements for group meals that the team had split equally; a $5,000 gift from a family member to assist with the down payment on an investment property; rent payments from the tenants of that investment property; and money exchanged with other TD Bank employees, including a transaction that had previously been reviewed by upper management and settled. (*Id.* ¶¶ 47-48.) TD Bank was especially interested in A. Wong's transactions involving the transfer of funds to A. Wong from Chinese or Chinese American people. (*Id.* ¶ 49.) None of the flagged transactions violated AML regulations or the TD Bank Code of Ethics, with the exception of A. Wong's loan to a former employee, which had previously been resolved. (*Id.*) Although TD Bank later identified additional transactions for investigation, A. Wong does not recall being asked about those in his interview. (*Id.* ¶ 50.)

At the close of his interview, A. Wong was put on leave. (*Id.* ¶ 51.) A few weeks later, A. Wong was denied access to his branch for personal banking purposes and was told that he had to schedule a time to visit and pick up his money. (*Id.* ¶ 54.) On June 5, 2023, A. Wong was terminated for violating TD Bank's Code of Ethics based on transactions from his personal account. (*Id.* ¶ 56.) TD Bank did not tell A. Wong which transactions violated the Code of Ethics or which provisions had been violated. (*Id.* ¶ 57.) TD Bank then began closing, or "demarketing," A. Wong's bank accounts. (*Id.* ¶¶ 25, 58.)

K. Wong was an assistant head teller at A. Wong's Chinatown branch. (*Id.* ¶ 62.) On March 21, 2023, K. Wong returned from vacation and realized that she had lost access to the TD Bank employee app. (*Id.* ¶ 63.) She learned that the branch was closed for an audit and was instructed to appear for an investigatory interview on March 26, 2023. (*Id.* ¶¶ 64-65.) At the interview, K. Wong was asked about various transactions she had made, including Zelle transactions with work friends and four separate deposits from her parents, totaling $25,000, which were a loan for a car, although K. Wong did not make clear to investigators that the money was loan. (*Id.* ¶¶ 72-78.) In particular, investigators questioned K. Wong about her parents' finances and asked K. Wong if the four transactions from her parents reflected an effort to avoid filing the currency transaction report that is mandated for a cash deposit of over $8,000. (*Id.* ¶¶ 75, 77.) K. Wong was put on paid suspension and eventually terminated on April 24, 2023, for purported violations of the Code of Ethics. (*Id.* ¶¶ 79-80.)

Ng was a Senior Commercial Sales Associate for TD Bank. (*Id.* ¶ 95.) Ng was instructed to appear for an interview with TD Bank on May 16, 2023. (*Id.* ¶ 96.) At her interview, Ng was asked about various transactions, including: a 2017 transaction in which Ng sent another individual, Paula Li, $500 so that Li could get newer bills for Ng to give out on Chinese New Year; various transactions dating back ten years; transactions in 2022 between Ng and her friend Gabriella DiMaggio, who is also Ng's coworker. (*Id.* ¶¶ 99-110.) In particular, investigators asked Ng about a $50,000 loan DiMaggio gave her, which Ng repaid, but which Ng told investigators was a gift. (*Id.* ¶¶ 104-05.) Ng returned to work after her investigation, but she was subsequently questioned about another transaction in which she used a demand debit ticket, which is used when a customer is not present for a transaction, to deposit a few thousand dollars from DiMaggio's account into the account of a medical provider. (*Id.* ¶¶ 113-14.) Ng

had checked with her branch manager to make sure the use of the demand debit ticket was permissible. (*Id.* ¶ 114.) Ng was terminated on July 6, 2023, and was told her termination was because she forged DiMaggio's name on a demand debit ticket, had financial ties with a coworker, and used TD Bank's system to look up DiMaggio's account, her husband's account, and her own account. (*Id.* ¶ 116.) Following Ng's termination, TD Bank demarketed her and her husband's accounts. (*Id.* ¶ 117.)

Su was a TD Bank store supervisor at a branch in Gravesend, Brooklyn. (*Id.* ¶ 126.) In November 2022, TD Bank investigators interviewed her by phone and questioned her about transactions dating as far back as about 2013 and about friends of hers who worked or once worked at TD Bank, Chung Pow and Tea Sinana, with whom Su had made various transactions over the years. (*Id.* ¶¶ 127, 129-31.) The investigators also questioned Su about deposits and transactions that she had made related to her family, as well as transactions that her family members had made in their own TD Bank accounts. (*Id.* ¶¶ 135-38, 142.) TD Bank terminated Su on November 14, 2022 for ethics code violations and lending money. (*Id.* ¶ 147-48.) TD Bank closed the accounts of Su and all of her family members. (*Id.* ¶ 150.)

Louie was vice president and store manager of TD Bank's Canal Street branch in Manhattan's Chinatown. (*Id.* ¶ 156.) On May 10, 2023, Louie met with TD Bank investigators, who asked her about transactions dating back to 2014, including transfers Louie made to her son and various transactions she and her husband made. (*Id.* ¶¶ 157, 159-62.) On June 6, 2023, Louie was told that she was terminated due to violations of TD Bank's Code of Conduct. (*Id.* ¶ 163.)

Plaintiffs commenced this action on November 19, 2025. (ECF No. 1.) On February 9, 2026, TD Bank filed a motion to dismiss (ECF No. 14) and an accompanying memorandum of

law (ECF No. 15 ("Mem.")). Plaintiffs filed an opposition on March 31, 2026. (ECF No. 28 ("Opp.").) TD Bank filed a reply in further support on April 21, 2026. (ECF No. 31 ("Reply").)

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, courts need not credit speculative inferences or "bald assertions and conclusions of law." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (quotation marks omitted).

In deciding a motion to dismiss, courts may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quotation marks omitted).

## III. Discussion

Plaintiffs assert employment discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL"). (Compl. ¶¶ 175-87.) Plaintiffs seek to

represent a class of "Chinese and Chinese American branch-level employees in the Unites States who have been subjected to investigation and termination for unspecific violations of TD Bank[']s Code of Conduct and Ethics from 2022 through the present." (*Id.* ¶ 169.) TD Bank argues that certain Plaintiffs' Title VII claims are time-barred, that the Complaint fails to plausibly allege either a disparate treatment, disparate impact, or pattern-or-practice claim, that TD Bank Group is not a proper defendant, and that, even if any claim survives against any defendant, class certification is implausible. (*See generally* Mem.) The Court takes each argument in turn.

**A. Timeliness**

TD Bank argues that certain Plaintiffs' Title VII and state law claims must be dismissed for lack of timeliness. (Mem. at 19.) K. Wong was terminated on April 24, 2023, and she filed an individual charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") "[o]n or about February 23, 2024." (Compl. ¶¶ 80, 92.) Su was terminated on November 14, 2022, and she filed an individual charge of discrimination with the EEOC "[o]n or about March 11, 2024." (*Id.* ¶¶ 147, 153.) Louie was terminated on June 5, 2023 (*id.* ¶ 163), and she filed her charge on April 5, 2024 (*see* ECF No. 16-4 at 2).[1]

"In New York, claims under Title VII . . . are subject to a 300-day statute of limitations—claims that accrued more than 300 days before the filing of a charge with the EEOC are time-barred." *Gonzalez v. N.Y.C. Health & Hosp. Corp.*, No. 18-CV-2645, 2019 WL 2435622, at *3 (S.D.N.Y. June 11, 2019) (quotation marks omitted): *see also* 42 U.S.C. § 2000e-5(e)(1). "This statutory requirement effectively acts as a statute of limitations, and Title VII claims are barred

[1] The Court may consider a plaintiff's EEOC charge even when it is not included in the complaint. *See Rivera v. JP Morgan Chase*, 815 F. App'x 603, 607 n.3 (2d Cir. 2020) (summary order).

by the failure to file a timely charge." *Hill v. Citibank Corp.*, 312 F. Supp.2d 464, 472 (S.D.N.Y. 2004).

Plaintiffs do not dispute that K. Wong, Su, and Louie filed their EEOC charges more than 300 days after the accrual of their claims. Instead, they argue that the statute of limitations is tolled for all putative members of a class upon the filing of a class action. (Opp. at 16.) That argument is inapposite, as it speaks only to the tolling of a statute of limitations *once* the class action is filed. *See, e.g.*, *McCabe v. Lifetime Ent. Servs., LLC*, 761 F. App'x 38, 40 (2d Cir. 2019) (summary order). Here, the 300-day period for K. Wong, Su, and Louie's claims had lapsed before the commencement of this putative class action. Plaintiffs do not raise any other basis for equitable tolling of the statute of limitations. Accordingly, the Court dismisses K. Wong's, Su's, and Louie's Title VII claims as untimely.

TD Bank argues that Su's NYSHRL and NYCHRL claims also must be dismissed because she filed the Complaint on November 20, 2025, more than three years after the date of her termination, which was on November 14, 2022. (Mem. at 19.) "Under the NYSHRL, claims must be filed within three years of the adverse employment action." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023); *see also Murray v. City of New York*, No. 23-CV-10031, 2024 WL 3553266, at *6 (S.D.N.Y. July 26, 2024) (same for NYCHRL). However, "[t]his three-year statute of limitations is tolled during the period in which a complaint is pending before the . . . EEOC." *Banks*, 81 F.4th at 260; *see also Stinson v. Morningstar Credit Ratings, LLC*, No. 22-CV-6164, 2024 WL 3848515, at *22 (S.D.N.Y. Aug. 16, 2024) (noting that courts in this district have held that EEOC charges also toll NYCHRL claims). Su filed her charge with the EEOC on March 11, 2024, within three years of the date of her termination. (Compl. ¶ 153.) The statute of limitations has been tolled on Su's NYSHRL and NYCHRL claims pending the EEOC's

resolution of her charge.[2] Accordingly, the Court declines to dismiss Su's state law claims as untimely.

**B. Disparate Treatment**

Plaintiffs argue that TD Bank subjected them to disparate treatment based on their national origin by "aggressively investigating any potential AML violations by employees working at the NYC Chinatown Branches," closing various Chinatown Branch locations "as part of the investigation," interviewing Chinese and Chinese American employees at TD Bank headquarters "in the presence of lawyers and corporate security," suspending such employees, and then terminating them "for unspecified violations of the Code of Conduct." (Compl. ¶¶ 12, 14.) Neither party differentiates between the Title VII and state law claims. (*See generally* Mem.; *see generally* Opp.) The NYSHRL and NYCHRL standard "is more lenient than the Title VII . . . standard." *Brown v. N.Y.C. Transit Auth.*, No. 22-CV-02949, 2024 WL 1347283, at *14 (S.D.N.Y. Mar. 29, 2024); *see also Reach v. HealthFirst, Inc.*, No. 23-CV-8085, 2026 WL 1802838, at *5 (S.D.N.Y. June 23, 2026) (noting that, following recent amendments, "courts treat discrimination claims under the post-amendment NYSHRL the same as it treats those claims under the NYCHRL"). Accordingly, the Court focuses its analysis on the stricter Title VII standard, which it concludes Plaintiffs have satisfied at the motion-to-dismiss stage.

"Disparate treatment claims under Title VII are 'subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*.'" *Valerio v. City of New York*, No. 18-

---

[2] The Complaint alleges that "Su has asked EEOC to issue a Notice of Right to Sue" (Compl. ¶ 155), and neither party provides further information as to whether Su's complaint is still pending before the EEOC. Because TD Bank relies only on the time that has elapsed between Su's termination and the filing of the Complaint, it has failed to satisfy its "burden of proving that the plaintiff's claim is untimely." *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, No. 18-CV-4273, 2020 WL 5089444, at *7 (S.D.N.Y. Aug. 28, 2020) (quotation marks omitted).

CV-11130, 2020 WL 353749, at *3 (S.D.N.Y. Jan. 21, 2020) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). "Courts evaluating such claims on a motion to dismiss consider 'whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation.'" *Id.* (quoting *Littlejohn*, 795 F.3d at 312). "To meet these reduced requirements, a complaint must plausibly allege facts showing that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id*. "An adverse employment action for the purposes of Title VII discrimination claims occurs where a plaintiff 'endures a materially adverse change in the terms and conditions of employment.'" *Miller-Sethi v. City Univ. of N.Y.*, No. 21-CV-8591, 2023 WL 419277, at *4 (S.D.N.Y. Jan. 26, 2023) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015)).

Plaintiffs are Chinese or Chinese American former employees of TD Bank who were terminated from their positions after an investigation into various transactions that they had made.[3] (*See generally* Compl.) The Complaint alleges that these investigations were targeted at Chinese and Chinese American employees, that TD Bank did not conduct similar investigations into flagged transactions of employees who were not Chinese or Chinese American, and that TD Bank did not conduct similar investigations at branches not in predominantly Chinese communities. (*Id.* ¶¶ 27, 31.) The Complaint further alleges that all but one of the twenty-two known terminated employees were Chinese or Chinese American. (*Id.* ¶ 30.)

[3] Although the only Plaintiffs with timely Title VII claims are A. Wong and Ng, their allegations mirror those of the other Plaintiffs. (Compl. ¶¶ 44-49, 56, 97-116.)

There is no dispute that Plaintiffs are members of a protected class, and on the current record, TD Bank does not dispute that they were qualified for their jobs. Instead, TD Bank contends that its investigations into Plaintiffs' misconduct did not constitute an adverse employment action and that Plaintiffs have failed to show that any subsequent termination was motivated by race or national origin. (Mem. at 17-19.)

Although "[c]ourts in this Circuit have held that investigations alone are . . . not adverse employment actions," *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 227 (E.D.N.Y. 2016) (quoting *Economou v. Caldera*, No. 99-CV-12117, 2000 WL 1844773, at *21 (S.D.N.Y. Dec. 18, 2000)), here, Plaintiffs do not allege that Plaintiffs were only investigated. Instead, they allege that the investigations resulted in their terminations from TD Bank. (*See* Compl. ¶¶ 56, 80, 116, 163.) "In circumstances where a plaintiff alleges that he or she suffered actual 'employment consequences' due to an investigation," as Plaintiffs did here, "'an adverse employment action may be found' from the investigation itself." *Bernardi v. N.Y. State Dep't of Corr.*, No. 19-CV-11867, 2021 WL 1999159, at *11 (S.D.N.Y. May 19, 2021) (quoting *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 266-68 (S.D.N.Y. 2006)); *see also Robinson v. De Niro*, 739 F. Supp. 3d 33, 98 (S.D.N.Y. 2023) ("Courts have . . . stated that an investigation may form the basis of an adverse employment action claim where the charges at issue resulted in subsequent employment consequences." (cleaned up)).

TD Bank's investigations into and subsequent termination of Plaintiffs constitute adverse employment actions. Moreover, Plaintiffs have sufficiently alleged that their national origin was a motivating factor in these employment actions. *Vega*, 801 F.3d at 87. The Complaint alleges that TD Bank "began closely investigating the personal transactions of Chinese and Chinese American employees who worked at branches serving Chinese and Chinese American

communities," and that TD Bank "did not conduct similar investigations into the flagged transactions of employees who are not Chinese or Chinese American, and did not conduct similar investigations at branches that are not in Chinatown." (Compl. ¶¶ 27, 31.) The Complaint also alleges that "[t]he targeted Chinese and Chinese American employees provided proof that transactions questioned by TD [Bank] were legitimate," yet were still terminated. (*Id.* ¶ 9; *see also id.* ¶¶ 49, 57 (alleging that none of A. Wong's transactions that TD Bank flagged to him in his interview violated TD Bank's Code of Ethics or AML regulations, with the exception of one transaction that had previously already been resolved, and that upon his termination, TD Bank refused to tell A. Wong which transactions violated its Code of Ethics or which provisions had been violated); *id.* ¶ 162 (alleging that Louie was able to explain to investigators the transactions about which she was questioned, but that her explanations were ignored or deemed to be suspicious).)

Contrary to TD Bank's contentions (Mem. at 18), such allegations are enough at this stage to establish "minimal support for the proposition that [TD Bank] was motivated by discriminatory intent" in investigating and then terminating Plaintiffs. *Valerio*, 2020 WL 353749, at *3. Although Plaintiffs allege the existence of comparators only in broad terms, "[p]leading on the basis of information and belief is generally appropriate" where "the names and records, if any, of persons who were not members of the protected classes and were more favorably treated . . . is information particularly within [the defendant's] knowledge and control." *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J.). Here, unlike in the promotion context where the person selected for the position is easily ascertainable, it is within the defendant's knowledge and control which of its employees were flagged for transactions similar to those of Plaintiffs but were not investigated or terminated. Discovery is

necessary to determine whether there are in fact other employees at TD Bank who are not Chinese or Chinese American, who engaged in similar transactions as the ones for which Plaintiffs were investigated and terminated, and who did not face investigation or termination.

In short, Plaintiffs have pleaded a plausible Title VII claim under a disparate treatment theory. Accordingly, their "similar claim under the broader NYCHRL [and NYSHRL] also necessarily survive[]." *Murray*, 2024 WL 3553266, at *8 (quotation marks omitted). Furthermore, to the extent Plaintiffs allege a pattern-or-practice theory of disparate treatment (Compl. at 30), the Court declines to reject that theory at this early stage of litigation. "Disparate treatment claims in the context of an employment discrimination case may be shown individually or by a pattern or practice suit brought by a 'group of plaintiffs, entitled to be certified as a class[.]'" *Hill v. City of New York*, 136 F. Supp. 3d 304, 331 (E.D.N.Y. 2015) (quoting *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013)). "To prevail on a pattern or practice disparate treatment claim, plaintiffs must demonstrate that intentional discrimination was the employer's standard operating procedure." *Allen v. City of New York*, No. 19-CV-3786, 2024 WL 3965697, at *7 (S.D.N.Y. Aug. 28, 2024) (cleaned up), *aff'd*, No. 24-2589-CV, 2025 WL 3152723 (2d Cir. Nov. 12, 2025).

For reasons discussed below, the Court declines to dismiss Plaintiffs' class claims at this early juncture. Moreover, the Complaint sufficiently alleges a widespread practice of discrimination against Chinese and Chinese American employees. The Complaint alleges that "TD Bank *constructed and maintained a system* for investigating 'suspicious' employee transactions that resulted in 'robust enforcement'—if an employee was Chinese," that such investigations went "far beyond the normal scope," and that TD Bank "closely investigat[ed] the personal transactions of Chinese and Chinese American employees who worked at branches

serving Chinese and Chinese American communities." (Compl. ¶¶ 8, 27 (emphasis added).) The Complaint also alleges that, in New York City alone, twenty-one out of the twenty-two known terminated employees are Chinese or Chinese American. (*Id.* ¶ 30.) These allegations establish that "the alleged racial discrimination amounted to more than sporadic acts of discrimination . . . and [that] the discrimination was directed at a class of victims." *Hill*, 136 F. Supp. 3d at 331. Although discovery may prove these allegations false, they are enough to prevail at the motion-to-dismiss stage.

### C. Disparate Impact

Although Plaintiffs state a claim for disparate treatment, Plaintiffs fail to plausibly allege a claim under a theory of disparate impact. "To state a Title VII claim under a theory of disparate impact, the plaintiff 'must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim.'" *Ndugga v. Bloomberg L.P.*, No. 20-CV-7464, 2023 WL 4744184, at *6 (S.D.N.Y. July 25, 2023) (quoting *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020)). Those elements require plaintiffs to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (cleaned up). Under the NYSHRL and NYCHRL, a plaintiff bringing a disparate impact claim "must establish 'that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of [the NYSHRL and NYCHRL].'" *Fitchett v. City of New York*, No. 18-CV-8144, 2021 WL 964972, at *24 (S.D.N.Y. Mar. 15, 2021) (quoting N.Y.C. Admin. Code, § 8-107(17)); *see also Reach*, 2026 WL 1802838, at *5 (noting that, following recent amendments, "courts treat discrimination claims under the post-amendment NYSHRL the same as it treats those claims under the NYCHRL"). Although this standard is more lenient, it

still "require[s] proof of a specific discriminatory employment policy or practice to sustain a disparate impact claim." *Allen v. City of New York*, No. 19-CV-3786, 2024 WL 3965697, at *8 (S.D.N.Y. Aug. 28, 2024), *aff'd*, No. 24-2589-CV, 2025 WL 3152723 (2d Cir. Nov. 12, 2025). Moreover, "the disparity must result from the neutral application of a policy, not from the discriminatory enforcement of a neutral policy." *Assistant Deputy Wardens/Deputy Wardens Ass'n v. City of New York*, No. 14-CV-4308, 2019 WL 4015119, at *2 (E.D.N.Y. Aug. 26, 2019).

Even under the more permissive state-law standard, Plaintiffs' disparate impact claim fails because they do not "identify a specific employment practice or policy[,] demonstrate that a disparity exists[,] and [] establish a causal relationship between the two." *Chin*, 685 F.3d at 151 (cleaned up). Although the Complaint alleges that "TD Bank began to enforce its AML policy in a way that . . . disproportionately impacted the bank's Chinese and Chinese American employees" because "they target cash transactions" (Compl. ¶¶ 8, 11), the Complaint does not explain what the "AML policy" is or articulate any other specific policy or set of policies that, though facially neutral, disproportionately affected Chinese or Chinese American employees. Indeed, it is not even clear what policy or policies Plaintiffs claim to have caused their terminations—the Complaint refers broadly to the TD Bank Code of Ethics and identifies specific conduct that was the basis for termination, but it does not identify the policies that govern that conduct or allege that specific policies were the basis for the terminations. (*See id.* ¶¶ 56, 80, 116, 148.)

In any event, to the extent that Plaintiffs do identify specific policies, they have failed to show a causal relationship between the *neutral* application of such policies and the disparate impacts that they allege. The Complaint alleges that A. Wong did not actually violate any TD Bank policies. (*Id.* ¶ 49.) As to Ng, the Complaint alleges that she was terminated for having

financial ties with a coworker, forging a friend's name on a demand debit ticket, and using TD Bank's system to look at other individuals' accounts. (*Id.* ¶ 116.) Su was told that she was terminated for lending money and for "ethics code violations." (*Id.* ¶ 148.) And although the Complaint does not state the reason for Louie's termination, it alleges that investigators asked her about large checks that she wrote to family and large transactions that she and her husband had made. (*Id.* ¶ 162.) There is no explanation in the Complaint as to why termination on these bases would disproportionately affect Chinese and Chinese American employees of TD Bank.

Rather, the Complaint alleges that Plaintiffs suffered a disparate outcome not because TD Bank neutrally enforced a policy, but because TD Bank "aggressively and disparately enforced AML policies against its Chinese and Chinese American employees and at its NYC Chinatown Branches because they are Chinese." (*Id.* ¶ 14.) Such allegations go toward disparate treatment, not disparate impact. Indeed, Plaintiffs respond to TD Bank's arguments on the disparate impact claim by arguing that TD Bank targeted Chinese and Chinese American employees for rigorous investigations and then conjured up reasons for termination. (Opp. at 12-13.) In other words, Plaintiffs' "theory of liability is not that a neutrally applied policy . . . resulted in a disparate impact." *De La Fuente v. Sherry Netherland, Inc.*, No. 17-CV-4759, 2018 WL 1597649, at *6 (S.D.N.Y. Mar. 27, 2018). Rather, the Complaint alleges that TD Bank engaged in intentional discrimination in targeting its Chinese and Chinese American employees for investigation and termination. "Such an allegation sounds not in disparate impact, but in disparate treatment." *Id.*

Because allegations in the Complaint "point to facts resembling discriminatory enforcement rather than disparate impact," the Court dismisses Plaintiffs' Title VII, NYCHRL, and NYSHRL claims to the extent they rely on a theory of disparate impact. *Assistant Deputy Wardens/Deputy Wardens Ass'n*, 2019 WL 4015119, at *2.

### D. Motion to Strike Class Claims

Plaintiffs seek to certify a class consisting of Chinese and Chinese American branch-level employees in the Unites States who have been subjected to investigation and termination for "unspecific violations" of TD Bank's Code of Conduct and Ethics from 2022 up until the filing of the Complaint. (Compl. ¶ 169.) TD Bank argues that, should the Complaint survive its motion, the Court should nonetheless dismiss Plaintiffs' class claims. (Mem. at 26-34.)

A proposed class must satisfy the prerequisites set out in Federal Rule of Civil Procedure 23(a): (1) "the class is so numerous that joinder of all members is impracticable"; (2) "there are questions of law or fact common to the class"; (3) "the claims or defenses of the representative parties are typical" of those of the class; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "If, 'after a rigorous analysis,' a court concludes that these prerequisites are met, it must determine if certification is appropriate under Rule 23(b)." *Erickson v. Fellini Soho Corp*, No. 25-CV-1344, 2025 WL 2383874, at *2 (S.D.N.Y. Aug. 18, 2025) (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)). Here, Plaintiffs seek to certify a class under Rule 23(b)(2) (Compl. ¶ 169), which permits a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"Determining whether a plaintiff has stated a claim and whether class treatment is procedurally proper are analytically distinct inquiries." *Velez v. MedRite, LLC*, No. 24-CV-2707, 2025 WL 2650137, at *10 (S.D.N.Y. Sep. 15, 2025) (quotation marks omitted). The proper vehicle for disposal of class claims before discovery is a motion to strike pursuant to Rule 23(d)(1)(D), which allows courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed.

R. Civ. P. 23(d)(1)(D). Motions to strike are disfavored in this circuit, and "[a] motion to strike class claims is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013) (cleaned up). "Nevertheless, such a motion may be entertained if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear." *Id.* (quotation marks omitted).

The Court cannot conclude on the face of the Complaint that it will be impossible for Plaintiffs to meet the requirements of Rule 23. TD Bank argues that the putative class cannot satisfy the requirements of commonality or typicality set out in Rule 23(a), citing the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). (Mem. at 28-31.) It also contends that Plaintiffs cannot establish numerosity. (*Id.* at 31.) These arguments are premature. Motions to strike class allegations at the motion-to-dismiss stage are permitted in the narrow context "where a motion to strike addresses issues separate and apart from the issues that will be decided on a class certification motion." *Travis v. Navient Corp.*, 460 F. Supp. 3d 269, 286 (E.D.N.Y. 2020) (cleaned up). However, TD Bank principally argues that Plaintiffs will be unable to demonstrate commonality, typicality, and numerosity, "and will therefore be unable to certify a class pursuant to [Rule 23(a)]." *Id.* As numerous courts in this district have held, "it would be premature to decide this fact-specific argument at this juncture." *Id.*; *see also Motta v. Glob. Cont. Servs. Inc.*, No. 15-CV-8555, 2016 WL 2642229, at *6 (S.D.N.Y. May 4, 2016) (denying motion to strike class claims as premature because the defendant argues to strike based on Rule 23's requirements for commonality, typicality, predominance, and superiority), *aff'd sub*

*nom. Motta v. Glob. Contact Servs., Inc.*, 675 F. App'x 98 (2d Cir. 2017); *Haley v. Tchrs. Ins. & Annuity Assoc. of Am.*, 377 F. Supp. 3d 250, 273 (S.D.N.Y. 2019) (same); *Kassman*, 925 F. Supp. 2d at 464 (same); *Vellon v. Chefs' Warehouse, Inc.*, No. 22-CV-4809, 2023 WL 6394228, at *5-6 (S.D.N.Y. Sep. 30, 2023) (same).

In any event, class certification is not so implausible as to justify disposal of class claims at this stage. *See Velez*, 2025 WL 2650137, at *10 ("To prevail on a motion to strike, Defendants must demonstrate that—on the face of the complaint—it would be impossible to certify the alleged class."). As discussed above, the Complaint alleges that TD Bank created a system for investigating employee transactions that targeted Chinese and Chinese American employees and subjected them to scrutiny "far beyond the normal scope." (Compl. ¶ 8.) The Complaint further alleges that named Plaintiffs shared a similar experience of being rigorously interviewed about transactions dating back several years, providing explanations for those transactions, and then later being terminated. (*Id.* ¶¶ 44-49, 56, 67-80, 97-116, 127-47, 157-63.) It is thus plausible that TD Bank has, as alleged, "aggressively and disparately enforced AML policies against its Chinese and Chinese American employees" in a way that is common to the class.[4] (*Id.* ¶ 14.) Discovery may, for example, demonstrate that TD Bank had an internal policy of disproportionately targeting the putative class members for investigations and sanctions. *See Vellon*, 2023 WL 6394228, at *6 (denying motion to strike where there is "a plausible inference"

[4] TD Bank argues that the proposed class is too broadly defined because it covers all Chinese and Chinese American employees who were terminated for unspecific violations of TD Bank's Code of Conduct and Ethics. (Mem. at 29.) It may well be that the proposed class is too broad. However, "[a] court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). "Modifying the class definition may be particularly appropriate at the certification stage." *Macchiavello v. ABB/CON-CISE Optical Grp. LLC*, No. 22-CV-8468, 2023 WL 4625009, at *6 (S.D.N.Y. July 19, 2023).

that "other individuals underwent the same process as Plaintiff[s]"). Likewise, discovery may demonstrate that numerosity is satisfied, given that the Complaint alleges twenty-two known terminations in New York City alone. (Compl. ¶ 30.)

Two of TD Bank's arguments warrant further discussion. First, TD Bank argues that class certification is impossible because Plaintiffs, as former employees, lack standing to bring a Rule 23(b)(2) class for injunctive relief. (Mem. at 32.) In support, TD Bank argues that *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), held that former employees lack Rule 23(b)(2) standing when the injunctive relief they seek is reinstatement. (*Id.*) But as Judge Furman explained in *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453 (S.D.N.Y. 2013), TD Bank's cited language from *Dukes* does not hold categorically that a former employee seeking reinstatement can never seek injunctive or declaratory relief against their former employer. *Kassman*, 925 F. Supp. 2d at 467. "[T]he Supreme Court's arguably broad language notwithstanding, it is a mistake to read *Dukes* as having adopted a blanket rule that always denies standing to ex-employees, which would have implications far beyond the class action context." *Id.* (cleaned up). Other courts in this district have reached the same conclusion. *See Chen-Oster v. Goldman, Sachs & Co.*, 251 F. Supp. 3d 579, 588 (S.D.N.Y. 2017) (collecting cases). Accordingly, because Plaintiffs seek reinstatement (Compl. at 30), they have standing to pursue class certification under Rule 23(b)(2). To the extent that TD Bank seeks to attack the standing of potential class members who may not seek or be eligible for reinstatement, its motion is denied as premature. *See Kassman*, 925 F. Supp. 2d at 468-69.

Second, TD Bank urges the Court to strike the NYCHRL and NYSHRL class claims because the Complaint fails to allege that the members of the putative nationwide class lived or worked in New York. (Mem. at 29.) "Under the NYSHRL and NYCHRL, 'nonresidents of the

city and state must plead and prove that the alleged discriminatory conduct had an impact within those respective boundaries.'" *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, No. 19-CV-6034, 2019 WL 6916099, at *4 (S.D.N.Y. Dec. 19, 2019) (quoting *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289 (N.Y. 2010)). The Complaint contains no allegations as to why non-resident class members would be able to show that TD Bank's alleged discriminatory conduct against them had an impact in New York or New York City. The absence of such allegations is a basis to strike those claims. *See Kassman*, 925 F. Supp. 2d at 469.

Accordingly, the motion to strike the NYSHRL and NYCHRL class claims is granted to the extent those claims are brought on behalf of people who do or did not live or work in New York State (for purposes of the NYSHRL) or New York City (for purposes of the NYCHRL). The motion to strike is denied in all other respects, without prejudice to TD Bank's renewal of these arguments if Plaintiffs move for class certification.

**E. TD Bank Group**

Lastly, TD Bank argues that TD Bank Group is erroneously named in the Complaint because TD Bank Group is not a standalone entity, but a collective name used to refer to the Toronto-Dominion Bank and its subsidiaries, and because it is not Plaintiffs' employer. (Mem. at 34.) Plaintiffs contend that this argument is premature. (Opp. at 17-18.)

Plaintiffs are correct. Although judicially noticeable forms filed with the Securities and Exchange Commission (the "SEC") indicate that TD Bank Group refers to Toronto-Dominion Bank and its subsidiaries (ECF No. 16-5 at 5), TD Bank marshals no arguments or case law for why that alone is reason to deem TD Bank Group not to be a suable entity. If anything, courts in this district have previously treated TD Bank, N.A. and TD Bank Group as one entity. *See Prince v. TD Bank N.A.*, No. 20-CV-0660, 2020 WL 8991788, at *1 n.1 (S.D.N.Y. Mar. 23, 2020). It may well be that TD Bank Group is not a proper defendant in this case, and it is

welcome to renew this argument at a later phase of litigation. But at the motion-to-dismiss stage, the Court declines to dismiss TD Bank Group based solely on a filing with the SEC.

## IV. Conclusion

For the foregoing reasons, TD Bank's motion to dismiss is GRANTED in part and DENIED in part, and TD Bank's motion to strike is GRANTED in part and DENIED in part.

The motion to dismiss is GRANTED as to K. Wong, Su, and Louie's Title VII claims and as to Plaintiffs' Title VII, NYCHRL, and NYSHRL claims to the extent those claims rely on a theory of disparate impact. The motion is denied in all other respects.

The motion to strike is granted as to the NYSHRL and NYCHRL class claims to the extent those claims are brought on behalf of people who do or did not live or work in New York State (for purposes of the NYSHRL) or New York City (for purposes of the NYCHRL). The motion to strike is denied in all other respects.

Defendants shall file an answer to the remaining claims within 14 days of the date of this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 14.

Counsel for all parties are directed to appear telephonically for an initial pretrial conference with the Court on September 21, 2026 at 4:00 p.m. Counsel should call (855) 244-8681 at the scheduled time. The attendee ID number is 231 2828 7066 ##. Counsel who appear at the pretrial conference must be authorized to negotiate terms of settlement. Members of the public may join but are instructed to place their phones on mute.

Counsel are directed to confer with each other prior to the conference regarding settlement and each of the other subjects to be considered at a Fed. R. Civ. P. 16 conference. Counsel are further directed to use the Court's Civil Case Management Plan and Scheduling Order form (the "Form") to jointly prepare a detailed written proposed schedule for any motions

and discovery. Counsel should type entries into this Form using a copy of the Form available at https://nysd.uscourts.gov/hon-j-paul-oetken. The parties shall submit a copy of the completed Form by filing on ECF at least seven calendar days prior to the date of the conference. A copy of the proposed case management plan should also be emailed to chambers at OetkenNYSDchambers@nysd.uscourts.gov.

SO ORDERED.

Dated: August 17, 2026
New York, New York

J. PAUL OETKEN
United States District Judge